# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

B.D., a minor, by and through his
parents and next friends Anne and
Brantley Davis, *et al.*,

            **Plaintiffs,**

            **v.**

DISTRICT OF COLUMBIA,

            **Defendant.**

)
)
)
)
)    **Civil Case No. 15-1139 (RJL)**
)
)
)
)
)
)

## MEMORANDUM OPINION

(December 21, 2021) [Dkts. #44, #46]

Plaintiffs Anne and Brantley Davis, as parents and next friends of their son, B.D. (collectively "plaintiffs" or "the Davises"), bring this action against the District of Columbia ("defendant" or "the District"), alleging that the District of Columbia Public Schools ("DCPS") and the Office of the State Superintendent of Education ("OSSE")— the agencies through which the District complies with its educational obligations— deprived B.D. of his rights under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Presently before the Court are Plaintiffs' Motion for Summary Judgment ("Pls.' Mot.") [Dkt. #44] and Defendant's Cross Motion for Summary Judgment ("Def.'s Mot.") [Dkt. #46]. Upon consideration of the parties' briefing, the applicable law, and the entire record herein, the Court GRANTS IN PART and DENIES IN PART both motions.

## BACKGROUND

This case is one in a series involving the District's provision of special education and related services to B.D. under the IDEA. *See* Am. Compl. [Dkt. #6] ¶¶ 9–15. The parties' long-running dispute over B.D.'s education is well documented in other opinions of this Court and our Circuit Court. *See B.D. v. District of Columbia*, 75 F. Supp. 3d 225 (D.D.C. 2014); *B.D. v. District of Columbia*, 817 F.3d 792 (D.C. Cir. 2016); *B.D. v. District of Columbia*, Case No. 15-cv-1139, 2020 WL 5763608 (D.D.C. Sept. 28, 2020); *B.D. v. District of Columbia*, Case No. 13-cv-1223, 2020 WL 5763630 (D.D.C. Sept. 28, 2020). In this Opinion, I will focus only on the facts relevant to the immediate dispute, which primarily concerns the Davises' parental rights to participate in B.D.'s educational planning during the 2013–14 and 2014–15 school years.

### A. Statutory Background

The IDEA guarantees children with disabilities a free appropriate public education ("FAPE") with services designed to meet each child's unique needs.   20 U.S.C. § 1400(d)(1)(A).   The "primary vehicle" for achieving the statute's goals is the individualized educational program ("IEP")—a comprehensive and individualized document that "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Honig v. Doe*, 484 U.S. 305, 311 (1988); *see also* 20 U.S.C. § 1414(d)(1)(A)(i). Once a child is identified as disabled, the local education agency ("LEA") responsible for the child must develop an IEP for the student. 20 U.S.C. § 1414(d); 34 C.F.R. § 300.323(c). That

IEP must then be reviewed at least annually by an IEP team including the student's parents, educators, specialists, LEA representatives, and the child, where appropriate.  20 U.S.C. § 1414(d)(1)(B), 1414(d)(4).  In reviewing the IEP, the IEP team must determine whether the IEP's goals are being achieved and revise the IEP as necessary to address lack of expected progress, the results of any evaluations, additional information about the child provided by the parents, and the child's anticipated needs.  *Id*. § 1414(d)(4)(A)(ii).

Parents who believe their child's IDEA rights have been violated may file an administrative due process complaint and are entitled to a due process hearing before an impartial hearing officer.  *Id*. § 1415(f).  It is up to the hearing officer in the first instance to make a determination "on substantive grounds" whether the child has been denied a FAPE.  *Id*. § 1415(f)(3)(E).  Where parents base their complaint on "a procedural violation, a hearing officer may find that a child did not receive a free appropriate public education only if the procedural inadequacies (I) impeded the child's right to a free appropriate public education; (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or (III) caused a deprivation of educational benefits."  *Id*. § 1415(f)(3)(E)(ii).  Any party aggrieved by the outcome of the administrative hearing may then file a civil action in district court.  *Id*. § 1415(i)(2)(A).

**B.  Factual Background**

B.D. is classified "as a student with multiple disabilities." AR 28.[1]  As such, DCPS

---

[1] Citations to the administrative record [Dkts. #36–#42] are referred to using the notation "AR."

and OSSE recognize B.D. as eligible to receive special education and associated services under the IDEA. AR 28. His conditions include an extreme form of attention deficit hyperactivity disorder, developmental coordination disorder, anxiety disorder with obsessive compulsive features, and a variety of other learning disorders. AR 28–30.

In October 2012, B.D.'s IEP team developed an IEP recommending that B.D. be educated in a therapeutic residential school. AR 108–61, 175–76. OSSE accordingly began to search for an appropriate location.[2] One such program in Massachusetts—the Eagleton School ("Eagleton")—accepted B.D., and this became his assigned location. AR 106–07. The Davises voiced numerous concerns regarding Eagleton's ability to meet B.D.'s unique needs, and eventually refused to accept this placement. AR 162–69, 181.

Several contentious months followed in which the District and the Davises sought to find and agree on an appropriate placement for B.D. Despite contacting numerous residential schools, these efforts were unsuccessful, and litigation eventually ensued. AR 189–251. In June 2013, against a backdrop of ongoing litigation, the parties again sought to convene B.D.'s IEP team to update his IEP and discuss finding an appropriate placement. AR 231–308. Around this time, OSSE again referred B.D. to Eagleton, informing the Davises in the end of June that he was again being considered for admission there. AR 236–47, 327–33.

### 1. The July 16, 2013 Meeting

The IEP team initially scheduled an IEP meeting for June 21, 2013. AR 310–16.

---

[2] In the process of searching for an appropriate residential facility, OSSE sought, and obtained, consent to disclose B.D.'s records to prospective schools. *See* Pls.' Statement of Facts with References to the AR ("Pls.' SMF") [Dkt. 44-1] at ¶ 22.

Two days prior to the meeting, however, DCPS postponed because B.D.'s case manager had a "personal" matter to attend to. AR 352. The parties agreed to reschedule the meeting for July 16. On July 8, however, the Davises alerted DCPS that B.D. had been accepted into the residential program at Rogers Memorial Hospital ("Rogers Memorial") in Wisconsin and that they intended to enter him in that program as soon as space became available. AR 361–65. The Davises stated that "[i]f DCPS expects Rogers Memorial to implement any IEP goals for [B.D.], then the process of updating and revising his IEP should continue now." AR 365. Two days later, DCPS responded with a letter from counsel explaining that DCPS could not place B.D. at Rogers Memorial because that facility had not received the requisite certifications under local regulations. AR 372. DCPS's letter did not specifically address the July 16 IEP meeting, but stated that "DCPS is not required to, nor will it propose a revised IEP while [B.D.] is unilaterally placed by the Davises at Rogers Memorial." AR 372. The letter concluded by asking the Davises to keep DCPS apprised of B.D.'s progress and stating that DCPS "looks forward to hearing about this progress and [B.D.'s] readiness to transition back to DCPS." AR 372.

On July 15, 2016, under the assumption the July 16 meeting was still going forward, DCPS circulated a dial-in number and location for the meeting. *See* AR 388. Caught off guard, the Davises requested to reschedule, explaining that while they "would very much like to attend an IEP meeting," they had assumed the meeting was cancelled in light of DCPS's letter stating that DCPS would not move forward with revising B.D.'s IEP in light of his placement at Rogers Memorial and DCPS's failure to provide an agenda, a list of participants, and other information. AR 384. The Davises explained that due to their

assumption that the meeting had been cancelled, they had not made the necessary childcare arrangements, preventing them from attending on short notice. AR 384. The following day, plaintiffs' counsel emailed the school reiterating the Davises' inability to attend and again requesting DCPS reschedule the meeting. AR 397–98.

DCPS nevertheless held the meeting on July 16, 2013 without the Davises present. The meeting minutes state that the need to "remain in compliance [with the requirement that IEPs be updated at least annually]" was the reason for moving forward in the Davises' absence. AR 394, 432. At the meeting, those present reviewed, among other things, B.D.'s progress, his present "levels, needs, baselines, and goals," and his least restrictive environment. AR 393. The notes repeatedly state that updates to B.D.'s goals were impossible to make because the IEP team lacked current information regarding B.D.'s behaviors and progress. For the social emotional goals category, the notes state that "[t]o the best of the team's knowledge, [B.D.] still presents with maladaptive behaviors." AR 395. For the speech and language therapy section, the notes explain that "no progress notes or updated data" were available. AR 395. For the occupational therapy section, the notes state that "[n]o progress reports" were available and as a result the team "can't make any modifications to the IEP." AR 395. In recognition of the Davises' absence, the meeting notes state that "[a] meeting will re-convene if requested at a mutually agreeable time and place." AR 394.

### 2. The October 1, 2013 Meeting

Three days after the July 16 meeting, OSSE issued a notice of location assignment placing B.D. at Eagleton. AR 478–79. The Davises requested a meeting with B.D.'s IEP

team, but in the following weeks efforts were derailed by B.D.'s hospitalization in two different hospitals.[3]  AR 721–745.  On September 18, 2013, DCPS emailed plaintiffs, through counsel, requesting to convene an IEP meeting with the goal of "discuss[ing] the new [hospital] reports and, based on the information they provide, mak[ing] recommendations on educational programming."  AR 746.  Shortly thereafter, DCPS sent the Davises a Prior Written Notice informing them that DCPS intended to modify B.D.'s educational placement so that he would begin receiving services at Eagleton.  AR 781.

The Davises and DPCS mutually agreed to an IEP meeting on October 1, 2013 "[t]o review new information and social emotional data from the student's recent hospitalizations and home-bound instruction to amend the IEP; discuss placement; and identify a site location."  AR 796.  The agenda for that meeting included "[r]eview of new data and recommends [sic] for updated social emotional goals," "[r]eview of recommended placement," and "[o]pportunity to discuss additional concerns or questions."  AR 795.  It did not include a plan to review goals outside of the "social emotional" category.

During the meeting, DCPS, the Davises, plaintiffs' counsel, B.D.'s psychologist, and other IEP team members discussed B.D.'s recent hospitalizations and a recent behavioral incident report.  AR 806–44.  The team reviewed B.D.'s psychiatric health and social-emotional goals, as well as his proposed placement at Eagleton.  AR 806–44.  The

---

[3] During this time, plaintiffs expressed a reluctance to share B.D.'s hospital and medical records with the IEP team out of a fear that they would be inappropriately disseminated to others without the Davises' consent.  AR 703–08.  This reflects the contentious nature of the parties' relationship, especially as it relates to the sharing of B.D.'s records.  At times, plaintiffs have complained both that the District has sent too many and too few records to prospective schools.  See Pls.' SMF ¶ 94 (asserting DCPS shared sensitive records without consent); AR 96 (asserting OSSE shared only a "small percentage" of the documents in B.D.'s file and expressing a concern that the school needs to "read the complete file").

Davises expressed concerns about B.D.'s ability to learn and progress in a residential treatment center given his auditory triggers and their experiences with recent inpatient hospitalizations.  AR 806–44.

In response, DCPS noted that it had considered the auditory triggers in the IEP and that it was confident that Eagleton was capable of addressing them.  AR 806–44.  An Eagleton representative attending the meeting reiterated that Eagleton had the "manpower" to provide B.D. the services he needed and that the school would develop a plan to manage the auditory triggers, likely with daily therapy.  AR 806–44.  At the end of the meeting, DCPS reiterated its recommendation that B.D. be placed at Eagleton and set a proposed date for the placement.  AR 806–44.  The Davises and plaintiffs' counsel reiterated their objections and rejected the proposal.  AR 806–44.   Nonetheless, an Amended IEP dated October 4, 2013 stated that DCPS amended B.D.'s present performance levels and annual goals "in a single area of concern"—the social–emotional–behavioral area.  AR 849.  A few days later, DCPS sent B.D.'s parents a Prior Written Notice identifying B.D.'s placement as Eagleton and noting that the Davises had rejected that placement.  AR 880–81.

### 3.  The July 29, 2014 Meeting

At a standstill and locked in litigation, B.D.'s IEP team did not meet again until July 29, 2014 when it convened for its mandatory annual review.  AR 961.  DCPS had prepared a draft IEP, which it circulated to some members of the IEP team but did not share with the Davises prior to the meeting.  AR 921.  During the meeting, the draft IEP was projected on a screen visible to all team members.  AR 921.  The Davises also received a paper copy.

AR 922.

During the IEP meeting, the Davises and counsel informed DCPS that B.D.'s psychiatrist, Dr. Laura Robb, had seen him recently and would be sending a letter to DCPS shortly with her impressions and recommendations.   AR 930.   Plaintiffs' counsel summarized the anticipated contents of the letter, and DCPS responded that it would include that information in the IEP. AR at 930–31. After the meeting, in September 2014, plaintiffs' counsel sent DCPS a list of requested corrections to the IEP meeting notes, as well as comments on that meeting. AR 1006–14. She did not request to reconvene at that time. AR 1006–14. In December 2014, the Davises, through counsel, requested a new IEP meeting to consider the letter from B.D.'s psychiatrist, as well as the "insights" of care providers working with B.D. AR 1025–28. DCPS declined to reconvene at that time, citing the need to await the results of upcoming evaluations prior to meeting. AR 1044.

## C. Procedural History

On January 30, 2015, plaintiffs filed an administrative due process complaint alleging DCPS violated the IDEA by (1) holding an IEP meeting on July 16, 2013 without the Davises; (2) failing to review previously developed portions of B.D.'s IEP at the October 1, 2013 meeting; (3) predetermining B.D.'s placement at Eagleton before the October 1, 2013 and July 29, 2014 meetings; (4) preventing B.D. from remaining in his current placement by repeatedly attempting to send him to Eagleton; (5) failing to provide certain information, including a proposed IEP, to the Davises in advance of the July 29, 2014 meeting; (6) limiting discussion at the July 29, 2014 IEP meeting to selected sections of a previously drafted IEP; and (7) repeatedly disclosing B.D.'s confidential records to

Eagleton without the Davises' consent. AR 1050–57. A hearing was held in March 2015 before an independent hearing officer ("IHO"). The IHO's hearing on decision ("HOD") issued on April 17, 2015. AR 6. The IHO sided with DCPS on the first six issues, holding DCPS did not deny B.D. a FAPE due to the alleged conduct. *See* AR 15–21. On the final issue of whether DCPS and OSSE had violated the IDEA by disclosing B.D.'s confidential information, the IHO concluded she lacked jurisdiction to hear the claim. AR 19–21.

Plaintiffs appealed the decision by bringing suit in this Court. *See* Compl. [Dkt. #1]. In their Amended Complaint, plaintiffs (1) sought reversal of the IHO's decision (Count 1); (2) sought a declaratory judgment that District's policies and practices for placing students in nonpublic schools violate the IDEA (Count 2); (3) brought a claim under 42 U.S.C. § 1983 based on the District's conduct (Count 3); (4) sought a declaratory judgment that OSSE's contracts with special education hearing officers rendered them OSSE employees in violation of the IDEA's independence requirements (Count 4); and (5) brought a 42 U.S.C. § 1983 claim based on the same lack-of-independence allegations (Count 5). Am. Compl. ¶¶ 63–81. Thereafter, defendant moved to dismiss Counts 1, 2, 3, and 5. *See* Def.'s Mot. to Dismiss Counts 1, 2, 3, and 5 [Dkt. #9]. On September 28, 2020, following a stay in proceedings entered at the parties' request, I granted defendant's motion with respect to Counts 2, 3, and 5, leaving Counts 1 and 4 as the sole remaining Counts. *See* Mem. Opinion [Dkt. #31]. Plaintiffs then moved for summary judgment on both Counts. *See* Pls.' Mot. Defendant, in turn, cross-moved for summary judgment on both remaining Counts. *See* Def.'s Mot. These motions are fully briefed and resolved herein.

## STANDARD OF REVIEW

Under the normal operation of Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In reviewing a hearing officer's decision under the IDEA, the Court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). Where, as here, neither party requests the Court hear additional evidence, cross motions for summary judgment serve as the "vehicle for asking the judge to decide the case on the basis of the administrative record." *Heather S. v. Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997); *see also Phillips v. District of Columbia*, 736 F. Supp. 2d 240, 246 (D.D.C. 2010); *Parker v. Friendship Edison Pub. Charter Sch.*, 577 F. Supp. 2d 68, 72 (D.D.C. 2008).

Plaintiff, as the party challenging the hearing officer's determination, bears the burden of persuading the Court, by a preponderance of the evidence, that the hearing officer erred. *Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005). Courts may not substitute "their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176 (1982). But less deference is owed in reviewing a hearing officer's decision under the IDEA than in other administrative contexts. *See Reid*, 401 F.3d at 521 ("[J]udicial review under IDEA is more rigorous than in typical agency cases."); *Kerkam v. Superintendent*,

11

*D.C. Pub. Schs.*, 931 F.2d 84, 87 (D.C. Cir. 1991) (a hearing officer's decision "without reasoned and specific findings deserves little deference").   Where a court overturns a hearing officer's decision, it must endeavor to carefully respond to the hearing officer's findings on each material issue and explain its basis for disagreeing with the hearing officer's conclusion. *Eley v. District of Columbia*, Case No. 11-cv-309, 2012 WL 3656471 (D.D.C. Aug. 24, 2012) ("[A] court upsetting the hearing officer's decision must explain its basis for doing so.").

## ANALYSIS

Plaintiffs seek summary judgment on Counts 1 and 4 of their Amended Complaint. With respect to Count 1, plaintiffs contend that, contrary to the hearing officer's conclusion, the District significantly impeded the Davises' right to participate in B.D.'s educational programing—and thereby denied B.D. a FAPE—by (1) holding the July 16, 2013 IEP meeting without the Davises present; (2) failing to cure this participatory deprivation at the October 1, 2013 meeting; (3) limiting the discussion at the July 29, 2014 IEP meeting to a draft IEP that DCPS did not share with the Davises prior to the meeting; (4) refusing to consider information not provided by the Davises in advance of the October 1, 2013 and July 29, 2014 meetings; and (5) repeatedly disclosing B.D.'s confidential records to private schools without the Davises' consent. *See* Pls.' Mem. of Points and Auths. in Support of Their Mot. for Summ. J. ("Pls.' Mem.") [Dkt. #44-2] at 4–26.

With respect to Count 4, plaintiffs argue that the hearing officer was not independent as required by the IDEA. Pls.' Mem. at 26 (citing 20 U.S.C. § 1415(f)(3)(A)(i)(I) and (II)). Plaintiffs assert that although officially denominated as "independent contractors," the

terms of IHOs' contracts with OSSE render them employees, thereby depriving them of the objectivity and independence required by the IDEA. *Id*. at 26–31. Defendant responds by arguing that plaintiffs' claims are moot, unjustified by the administrative record, or outside of this Court's jurisdiction due to plaintiffs' failure to exhaust their administrative remedies. *See* Def.'s Mot. at 16–33.

For the reasons stated below, I agree with plaintiffs that B.D. was denied a FAPE between July 16, 2013 and July 29, 2014 due to the District's significant impediment of the Davises' participation in their son's educational planning during this timeframe. Accordingly, I grant plaintiffs partial summary judgment on Count 1. With respect to the remainder of Count 1, however, I grant the District summary judgment as plaintiffs have failed to show that their parental participation was significantly impeded beyond July 29, 2014. I also grant the District summary judgment on Count 4 because plaintiffs failed to exhaust their administrative remedies on this claim.

## A. Mootness

As a threshold argument, defendant contends plaintiffs' claims are moot. Def.'s Mot. at 16. A claim is moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). "The initial 'heavy burden' of establishing mootness lies with the party asserting a case is moot." *Honeywell Int'l Inc. v. Nuclear Regul. Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010) (quoting *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 459 (D.C. Cir. 1998)). Where a party retains a "concrete interest" in the outcome, the case is not moot and the court retains jurisdiction to hear the dispute. *See Olu-Cole v. E.L. Haynes Pub. Charter*

*Sch.*, 930 F.3d 519, 530 (D.C. Cir. 2019).   In the IDEA context, where a party seeks compensatory education to make up for past deficiencies in a student's educational program, the case is not moot merely due to the provision of an appropriate education at a later time.  *See id.* (citing *Boose v. District of Columbia*, 786 F.3d 1054, 1056 (D.C. Cir. 2015)).

With respect to Count 1, defendant asserts that because B.D. received numerous IEPs and placements that were satisfactory to plaintiffs from 2016 onward, the alleged deficiencies in 2013 and 2014 no longer present a live controversy.  Def.'s Mot. at 17–18. This argument runs headlong into our Circuit Court's precedent, which has repeatedly held that where, as here, parents seek compensatory education for alleged deficiencies in prior IEPs, the fact that the parties subsequently reach agreement on educational programming on a go-forward basis does not moot the claim.  *See Lesesne v. District of Columbia*, 447 F.3d 828, 833 (D.C. Cir. 2006); *Boose*, 786 F.3d at 1059; *Olu-Cole*, 930 F.3d at 530–31. Defendant relies on *J.T. v. District of Columbia*, but the comparison is inapposite.  *See* Def.'s Mot. at 19 (citing 983 F.3d 516 (D.C. Cir. 2016)).   Unlike in *J.T.*, where the parents were not seeking compensatory education, 983 F.3d at 521, here plaintiffs have plainly sought such relief as a result of the alleged deficiencies in the 2013 and 2014 IEPs.  *See* Am. Compl. at 23.  Accordingly, Count 1 remains a live controversy despite the intervening years and subsequent agreeable placements.[4]

---

[4] On reply, defendant appears to concede the point, stating that "*Boose* supports Plaintiffs' contention that this case in its *entirety* is not moot." Def.'s Reply at 4.  The concession is well taken.  While defendant is correct that certain portions of the relief sought may well have been rendered obsolete by intervening events, this does not render the claim moot. *See Calderon v. Moore*, 518 U.S. 149, 150 (1996) (holding "a partial remedy" is sufficient to prevent a claim from being dismissed as moot).

Defendant also raises a related case in this district—*B.D. v. District of Columbia*, Case No. 13-cv-1223—arguing that plaintiffs "improperly seek to obtain in this action the relief that they did not receive in the remand hearing" there. Def.'s Reply [Dkt. #51] at 3. In that related proceeding, B.D. and his parents challenged, among other things, an administrative hearing officer's May 10, 2013 stay-put determination regarding what was properly included in B.D.'s then-current educational placement. *See B.D.*, 2020 WL 5763630, at *1. I remanded to the hearing officer for reconsideration of whether certain related services were included in B.D.'s then-current education as of May 10, 2013. *Id.* at *6, *10. While the FAPE denial period in that case overlaps with the alleged FAPE denial period here, plaintiffs' claims there center on separate alleged harms from the ones raised here. *See* Case No. 13-cv-1223, [Dkt. #83-1] at Ex. 5 (hearing officer on remand limiting his decision to what would be an appropriate compensatory education award for harm associated with B.D. not receiving related services as part of his May 10, 2013 stay-put decision). Accordingly, while not irrelevant to the instant proceeding, Case No. 13-cv-1223 fails to moot the present claims.

With respect to Count 4, defendant asserts plaintiffs' claim is moot because "events have so transpired" that a decision in plaintiffs' favor "will not affect [p]laintiffs' current situation." Def.'s Mot. at 18–19. Not so. In Count 4, plaintiffs challenge the independence of the hearing officer under the IDEA. Assuming, as I must for purposes of assessing whether the claim is moot, that the claim is properly before the court and plaintiffs are correct on the merits, it is not difficult to see how the Court could grant "effectual relief." *See Church of Scientology v. United States*, 506 U.S. 9, 12 (1992). Not only could I

invalidate the hearing officer's decision, but I could require changes to ensure independence in future administrative proceedings in the case. Accordingly, Count 4 remains a live controversy as well.

### B. Free Appropriate Public Education (Count 1)

Turning to the merits, plaintiffs seek summary judgment on Count I on the basis that B.D. was denied a FAPE during the 2013–14 and 2014–15 school years as a result of the District's violation of the Davises' participatory rights under the IDEA. *See* Pls.' Mem. at 4–26. As the Supreme Court has repeatedly emphasized, the central importance of parental participation in the creation of educational programs under the IDEA cannot be gainsaid. *See Honig*, 484 U.S. at 311 ("Congress repeatedly emphasized throughout the [IDEA] the importance and indeed the necessity of parental participation in both the development of the IEP and any subsequent assessments of its effectiveness ...."); *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist.*, 458 U.S. at 205–06; *Lofton v. District of Columbia*, 7 F. Supp. 3d 117, 123 n.6 (D.D.C. 2013). However, not every minor procedural error on behalf of a school board results in the denial of a FAPE. *See Lesesne*, 447 F.3d at 834 (collecting cases). Instead, where the complaint centers on a deprivation of the parental right to participate, plaintiffs must show that the procedural violations "significantly impeded" that right in order to show a FAPE denial. 20 U.S.C. § 1415(f)(3)(E)(ii). Plaintiffs cite numerous incidents that allegedly rise to this level. *See* Pls.' Mem. at 4–26. I address these in turn.

### 1. July 16, 2013 Meeting

Plaintiffs first argue that when DCPS moved forward with the July 16 meeting in

the Davises' absence, it violated their procedural rights to participate, resulting in the denial of a FAPE.  I agree.  In order to ensure meaningful participation, LEAs "must take steps to ensure that one or both of the parents of a child with a disability are present at each IEP Team meeting."  34 C.F.R. § 300.322(a).  This includes "[s]cheduling the meeting at a mutually agreed on time and place."  *Id*. § 300.322(a)(2).  When parents cannot attend in person, they "may agree to use alternative means of meeting participation, such as video conferences and conference calls."  *Id*. § 300.328.  But DCPS may only hold a meeting without a parent if it is "unable to convince the parents that they should attend."  *Id*. § 300.322(d).

Here the record bears out that DCPS failed to comply with these requirements.  In the days before the meeting, the Davises' apparent decision to unilaterally place B.D. at Rogers Memorial and DCPS's response undoubtedly created confusion regarding whether the July 16 meeting was moving forward.  This came to a head on the day before the meeting when DCPS circulated a dial-in number and the Davises realized that DCPS still intended to hold the meeting.  Immediately upon realizing the parties were not on the same page, however, Ms. Davis reached out to the hearing officer stating that she "would very much like to attend" and attempted to reschedule the meeting at a mutually convenient time.  AR 399–400.  Under the circumstances, nothing more was required because, at that point, it was clear that the meeting was no longer "at a mutually agreed on time and place" and DCPS had not been "unable to convince the parents that they should attend."  34 C.F.R. § 300.322(a)(2), (d).

The hearing officer's conclusion to the contrary finds no basis in the facts or law.

*See* AR 16 (finding that DCPS "methodically complied with its statutory obligations").

First, the hearing officer's conclusion rests on the flawed assumption that once a meeting is scheduled "at a mutually agreed on time and place," 34 C.F.R. § 300.322(a)(2), the District is free to ignore conflicts that may arise.   The plain meaning of the regulatory language, however, requires more from school boards, including responding to commonplace requests to reschedule.  *See Doug C. v. Hawaii Dep't of Educ.*, 720 F.3d 1038, 1044 (9th Cir. 2013); *J.N. v. District of Columbia*, 677 F. Supp. 2d 314, 321–22 (D.D.C. 2010).   Where, as here, a conflict arises prior to the meeting, it is timely communicated to the other side, and an offer is made to reschedule, the previously scheduled meeting is no longer in conformity with the regulation because it is no longer "at a mutually agreed on time and place."   34 C.F.R. § 300.322(a)(2); *J.N.*, 677 F. Supp. 2d at 321–22 (holding DCPS violated parental right to participate where it held an IEP meeting without student's parents despite requests in the three days immediately prior to the meeting to reschedule).

Second, the hearing officer's conclusion ignores the regulatory prohibition on holding a hearing unless DCPS is unable to convince parents "that they *should* attend." 34 C.F.R. § 300.322(d) (emphasis added).  When Ms. Davis reached out on the day before the meeting saying she would "very much like to attend," she had plainly communicated to DCPS that she believed she should attend the meeting.  *See Doug C.*, 720 F.3d at 1044 (school board denied FAPE to student by holding IEP meeting without parent despite parent's "vigorous object[ion]" and offer to reschedule); *J.N.*, 677 F. Supp. 2d at 321–22.

Ignoring the plain meaning of the regulatory language, the hearing officer engaged

18

in an analysis of whether plaintiffs' confusion regarding the meeting was reasonable.  AR 16.  Neither the IDEA nor its implementing regulations, however, base the District's obligations on the reasonableness of a parent's scheduling error.  *Doug C.*, 720 F.3d at 1044–45.  To the contrary, the regulatory scheme puts a clear thumb on the scales— parental participation is required up until the point the local educational agency can no longer convince the parents they "should" attend an IEP meeting.[5]  *See* 34 C.F.R. § 300.322(d).  Accordingly, the District may be required to accommodate parents even where they are difficult, contentious, or comparatively more at fault in a scheduling mix-up.[6]  *Doug C.*, 720 F.3d at 1044–45.  Because Ms. Davis plainly came within the reach of § 300.322(d), the hearing officer erred in finding that no violation occurred by holding the July 13 meeting in her absence.  Due to the primary importance of parental participation, the complete exclusion of the Davises from the IEP meeting rises to the level of a substantive FAPE denial because it "significantly impeded" their ability to participate in B.D.'s educational planning.  20 U.S.C. § 1415(f)(3)(E)(ii)(II); *Doug C.*, 720 F.3d at 1044– 45; *Hill v. District of Columbia*, Case No. 14-cv-1893, 2016 WL 4506972, at *8, 25 (D.D.C. Aug. 26, 2016); *Eley*, 2012 WL 3656471, at *9.

---

[5] Defendant, relying on *A.L. v. Jackson County School Board*, argues it should be excused from excluding plaintiffs from the IEP meeting because plaintiffs failed to explain why they could not participate by phone. Def.'s Mot. at 26 (citing Case No: 5:13-cv-85-RS-GRJ, 2014 WL 5500631, at *7 (N.D. Fla. Oct. 30, 2014)).  This argument, however, is doubly flawed.  First, under 34 C.F.R. § 300.328, parents *"may* agree to use alternative means of meeting participation."  The regulation does not empower the District to *require* parents to participate by phone when they cannot attend in person.  Second, *Jackson* is entirely distinct. There, the district court lamented how the parent had not provided any explanation for her "repeated and unreasonable history of failure to attend the IEP meeting[,] … constant requests for rescheduling …, or her failure to participate by phone." 2014 WL 5500631, at *7.  Here, no such history of recalcitrance exists.
[6] There will, of course, be cases where parental conduct is so egregious that the District's obligations will be satisfied without an explicit statement from the parents that they refuse to attend.  *See A.L. v. Jackson Cnty. Sch. Bd.*, 635 F. App'x 774, 779–81 (11th Cir. 2015).

### 2. October 1, 2013 Meeting

Plaintiffs next argue the October 1 meeting failed to cure this FAPE denial because it was insufficient in scope to replace the July 13 annual review and because DCPS "predetermined" Eagleton as the appropriate placement for B.D. prior to the meeting. Pls.' Mem. at 15–20. I agree with plaintiffs on the former point, but disagree on the latter.

Where an LEA has caused a FAPE denial due to improperly excluding parents, it bears a heavy burden in remediating this procedural violation. *See Doug C.*, 720 F.3d at 1047; *Gaston v. District of Columbia*, Case No. 18-cv-1703, 2019 WL 3557246, at *7 (D.D.C. Aug. 5, 2019). In a single paragraph, the hearing officer concluded that because plaintiffs were able to participate and because "the relevant portions" of the IEP were reviewed during the October 1 meeting, there had been no denial of a FAPE as a result of this meeting. AR 16–17. But this determination was premised on the hearing officer's prior erroneous conclusion that no violation occurred with respect to the July 16 meeting. AR 16. What it fails to incorporate is that the Davises were entitled to participate in the full creation of B.D.'s IEP for the 2013–14 school year. *See Doug C.*, 720 F.3d at 1047. This requires more than some after-the-fact participation, which is all DCPS offered here through the October 1 meeting. *See id.* (holding "after-the-fact parental involvement" is insufficient to cure a FAPE denial caused by excluding a parent from an IEP meeting because "the IDEA contemplates parental involvement in the creation process" (cleaned up)); *Gaston*, 2019 WL 3557246, at *7 ("[A] subsequent adequate course of action cannot sanitize a prior inadequate decision.").

As the record shows, critical components of an IEP team's annual review were

omitted or overlooked during the October 1 meeting. IEP teams are required to, among other things, assess the student's progress toward his annual goals, review the child's anticipated needs, and receive information from the student's parents. 20 U.S.C. § 1414(d)(4)(A)(ii). The limited focus of the October 1 meeting failed to do so. Despite not being able to update Braeden's goals in numerous categories at the July 16 meeting due to lack of relevant data, *see* AR 395–96, the October 1 meeting did not review or update Braeden's IEP in many of these areas. AR 806–44. Nor did it seek information from the Davises on his progress in these areas. AR 806–44. Instead, the October meeting focused almost exclusively on the District's preferred placement at Eagleton, a recent incident that had occurred with a home instructor, and updating Braeden's goals in the social-emotional category. AR 806–44. This limited review was insufficient to cure the prior deficiencies, resulting in a continued FAPE denial through the next time the IEP team convened in July 29, 2014. *See Doug C.*, 720 F.3d at 1047; *Gaston*, 2019 WL 3557246, at *7.

Plaintiffs' argument that DCPS predetermined Eagleton as B.D.'s location, however, does not fare as well. While parents' participation is crucial in the determination of an appropriate educational placement for a student, the IDEA does not "explicitly require parental participation in site selection." *James v. District of Columbia*, 949 F. Supp. 2d 134, 138 (D.D.C. 2013); *Z.B. v. District of Columbia*, 382 F. Supp. 3d 32, 47 (D.D.C. 2019). So long as the location of services is based on and capable of implementing the student's IEP, local educational agencies generally have discretion in selecting the appropriate site. *See* 34 C.F.R. § 300.116(b)(2); *O.O. v. District of Columbia*, 573 F. Supp. 2d 41, 55 (D.D.C. 2008).

Plaintiffs here cite a litany of concerns that they have regarding the adequacy of the Eagleton placement, *see* Pls.' Mem. at 16–20, but they do not present any evidence that the hearing officer erred in finding that Braeden's IEP team carefully considered Braeden's needs and plaintiffs' concerns. AR 17. Nor could they, as the record fully supports the hearing officer's conclusion on this issue. AR 806–44. Ultimately, plaintiffs express a disagreement with the IEP team's conclusion that Eagleton was an appropriate placement, *see* Pls.' Mem. at 16–20, but this is insufficient to show a denial of a FAPE on this issue.[7] *Hawkins v. District of Columbia*, 692 F. Supp. 2d 81, 84 (D.D.C. 2010) ("[T]he right conferred by the IDEA on parents to participate in the formulation of their child's IEP does not constitute a veto power over the IEP team's decisions." (quoting *A.W. v. Fairfax Cnty. Sch. Bd.*, 372 F.3d 674, 683 n.10 (4th Cir. 2004))).

### 3.  July 29, 2014 Meeting

Unlike the 2013–14 school year, the record adequately supports the hearing officer's conclusion that the District did not significantly impede the Davises' right to participate in planning B.D.'s education for the 2014–15 school year. AR 18–19. The Davises focus on two alleged deficiencies. First, they argue DCPS violated plaintiffs' right to meaningfully participate by failing to send the draft IEP to the Davises in advance of the July 29 meeting and unduly limiting the discussion in the meeting to certain topics. Pls.' Mem. at 20–22. Second, they assert DCPS violated their right to participate by refusing to reconvene or

---

[7]  It also cannot be said that the deficiencies in the July 16 meeting somehow led to DCPS predetermining Eagleton was an appropriate placement based on a deficient IEP. *See* Pls.' Mem. at 16. DCPS's consideration of Eagleton dates back to October 2012, at which time the IEP team concluded B.D. should be placed in a residential facility. That IEP was independently challenged by plaintiffs, but both a separate independent hearing officer and this Court found it complied with the IDEA.

otherwise consider information the Davises provided after the meeting, principally a letter from B.D.'s psychologist, Dr. Laura Robb.  *Id.* at 22–25.

With respect to the first charge against DCPS, I agree with the hearing officer's conclusion that "[t]he evidence does not support a finding that [the Davises were] not able to participate in the July 29" meeting or that the discussion was unduly limited.  AR 19. The record reveals that the IEP team reviewed each area of concern for B.D. and revised several of his goals.  AR at 918–60.  As the hearing officer found, plaintiffs "gave feedback throughout."  AR 19; *see also* AR 918–60.  Indeed, the IEP made several adjustments specifically in response to plaintiffs' requests, including adding assistive technology to assist B.D. and agreeing to conduct comprehensive evaluations and assessments.  AR at 993–95.

Plaintiffs focus on DCPS's failure to provide a draft IEP in advance of the meeting. Pls.' Mem. at 22.  But, as plaintiffs concede, at the time of the meeting, DCPS was not under any specific statutory or regulatory obligation to do so.  *Id.* At 21–22. In other contexts, the IDEA identifies *with specificity* what information must be provided to parents. *See*, *e.g.*, 34 C.F.R. § 300.322(b) (identifying what must be included in a notice to parents). Accordingly, where, as here, no statutory or regulatory requirement obligated DCPS to provide an advance copy of the draft IEP, I find the failure to do so does not constitute a procedural violation, must less one that significantly impeded the plaintiffs' ability to participate.[8]  Accordingly, the District is entitled to summary judgment on this issue.

---

[8]   The cases plaintiffs cite in support of their position on this point are unhelpful.  In each, the court considered the school board's failure to comply with an explicit procedural requirement.  *MM v. Lafayette Sch. Dist.*, 767 F.3d 842 (9th Cir. 2014); *Amanda J. v. Clark Cnty Sch. Dist.*, 267 F.3d 877 (9th Cir. 2001).

With respect to the failure to consider Dr. Robb's letter, I cannot consider this argument because plaintiffs have failed to exhaust their administrative remedies on this issue. It is well established that "an allegation not presented to the independent hearing officer at a due process hearing may not be raised for the first time in this Court." *Holdzclaw v. District of Columbia*, 524 F. Supp. 2d 43, 47 (D.D.C. 2007); *see also Cox v. Jenkins*, 787 F.2d 414, 419–20 (D.C. Cir. 1989). The administrative complaint in this case was well drafted with the assistance of counsel. AR 1050–57. In it, plaintiffs raise numerous issues in detail, including seven separately identified deficiencies with the District's provision of educational services. AR 1050–57. Despite this detail, however, and the form's admonishment that "[a]ny issue not identified in this complaint cannot be raised at the due process hearing," plaintiffs failed to include the failure-to-consider argument they now seek to advance. AR 1053. Accordingly, this Court lacks jurisdiction on this issue and must grant summary judgment to the District.

### 4. Disclosing Confidential Records

Finally, plaintiffs argue that DCPS violated B.D.'s confidentiality rights under the IDEA by sending his educational records to private schools without the Davises' consent. Pls.' Mem. at 25. The hearing officer concluded that this issue fell outside of her jurisdiction in light of the fact that claims related to the privacy of a student's records must be brough through an alternative administrative process under the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232(g). AR 19–21. To avoid the implication of this ruling, plaintiffs frame their argument in this Court as a procedural violation affecting parental participatory rights. Pls.' Mem. at 26. They contend that had

the District let the Davises play a larger role in selecting which records would be sent to prospective schools, it would have enabled plaintiffs to better participate in the process of assessing a location's ability to implement B.D.'s IEP, and therefore the failure to adequately involve the parents in this process significantly impeded their ability to participate in planning B.D.'s educational placement, resulting in a FAPE denial. *Id.*

Plaintiffs offer no precedential support for this theory, and I find it is unsupported by the record here. Although plaintiffs repeatedly expressed discontent with the District's decisions regarding disclosure of B.D.'s records, they concede that they initially consented to this disclosure when the search for a residential facility began in 2012. *See* Pls.' SMF ¶ 22 ("In 2012, Ms. Davis gave DCPS consent to send B.D.'s records to OSSE in order for the process of making referrals to private schools[.]"). By September 13, 2013, plaintiffs may have withdrawn consent, at least with respect to some of B.D.'s records. *See* AR 703–45 (informing DCPS that certain medical records were being provided subject to a requirement not to disclose them to non-IEP team members). But even if that is the case, plaintiffs have failed to adequately connect the alleged disclosure of confidential records after the point at which consent was withdrawn to the Davises' ability to meaningfully participate in B.D.'s educational placement. *See* Pls.' Mem. at 25–26. Accordingly, they have failed to carry their burden in showing a FAPE denial occurred on this issue.

## C. Hearing Officer Independence (Count 4)

In Count 4, plaintiffs challenge the District's administrative due process system, contending that hearing officers, including the hearing officer in this case, lack the independence required by statute. Am. Compl. ¶¶ 74–78. Under the IDEA, a hearing

officer must, at a minimum, not be "(I) an employee of the State educational agency or the local educational agency involved in the education or care of the child; or (II) a person having a personal or professional interest that conflicts with the person's objectivity in the hearing." 20 U.S.C. § 1415(f)(3)(A)(i).  Relying on general principles of agency law, plaintiffs assert that the hearing officers' contractual relationship with OSSE renders them employees in violation of the statute.  Pls.' Mem. at 26–31.  Defendant counters first that plaintiffs are barred from bringing this claim due to a failure to exhaust administrative remedies, and, in the alternative, that hearing officers' contractual relationship with the OSSE makes them independent contractors, not employees.   Def.'s Mot. at 20–22. Unfortunately for plaintiffs, I agree with defendant on the first point, and decline to address the second.

As already discussed, "an allegation not presented to the independent hearing officer at a due process hearing may not be raised for the first time in this Court." *Holdzclaw*, 524 F. Supp. 2d at 47.  In related litigation involving the same parties, I have already found with respect to this precise argument that the Court lacks jurisdiction to hear lack-of-hearing-officer-independence claims where plaintiffs fail to exhaust their administrative remedies.  *See B.D.*, 2020 WL 5763630, at *9 (concluding challenges to hearing officer independence could have been brought before a hearing officer in the first instance and therefore failed to qualify for any exception to the exhaustion requirement).   Not surprisingly, I reach the same result again here.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART plaintiffs' Motion for

Summary Judgment [Dkt. #44] on Count 1 on the basis that B.D. was denied a FAPE during the 2013–2014 school year.   The Court REMANDS the case to a hearing officer to determine the appropriate amount of compensatory education to be awarded for this FAPE denial, taking into account, as appropriate, the hearing officer's May 11, 2021 decision on remand in related case *B.D. v. District of Columbia*, 13-cv-1223 (OSSE Case No. 2013-0211).   The Court DENIES plaintiffs' Motion for Summary Judgment on the remainder of Count 1 and Count 4.

The Court DENIES IN PART defendant's Cross-Motion for Summary Judgment [Dkt. #46] on Count 1 to the extent it seeks judgment in its favor on the issue of whether B.D. was denied a FAPE during the 2013–2014 school year.   The Court GRANTS defendant's Cross-Motion for Summary Judgment on the remainder of Count 1 and Count 4.   An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge